# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| KUN JIANG, | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| HASLET PARK HOMEOWNER'S | ) C.A. No. 2023-0780-LM (BWD) |
| ASSOCIATION and MASTRIANA | ) |
| PROPERTY MANAGEMENT, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| HASLET PARK HOMEOWNER'S | ) |
| ASSOCIATION, INC., | ) |
| | ) |
| Counterclaim Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| KUN JIANG, | ) |
| | ) |
| Counterclaim Defendant. | ) |

## MEMORANDUM OPINION RESOLVING EXCEPTIONS

Date Submitted: June 16, 2026
Date Decided: July 24, 2026

Kun Jiang, Newark, DE; *Pro Se Plaintiff/Counterclaim Defendant.*

Kenneth M. Doss and Namra Sandhu, CASARINO CHRISTMAN SHALK RANSOM & DOSS P.A., Wilmington, DE; *Attorneys for Defendant Haslet Park Homeowner's Association, Inc.*

Melissa L. Rhoads, TIGHE & COTTRELL, P.A., Wilmington, DE; *Attorneys for Defendant Mastriana Property Management, Inc.*

Robert J. Valihura, Jr. and Caren Sydnor, MORTON, VALIHURA & ZERBATO, LLC, Greenville, DE; *Attorneys for Counterclaim Plaintiff Haslet Park Homeowner's Association, Inc.*

**DAVID, V.C.**

The self-represented plaintiff in this action replaced the second-story windows in his condominium unit without first obtaining approval from the condominium unit owner's association council. The council informed the plaintiff that his new windows violated the condominium's code of regulations and would have to be replaced. The plaintiff refused, and after giving him notice and an opportunity to be heard, the association imposed a daily fine. The plaintiff ran for a position on the council but was not elected.

The plaintiff initiated this suit, alleging violations of the condominium's governing documents and the Delaware Uniform Common Interest Ownership Act, among other claims. The association filed counterclaims, seeking a permanent injunction directing the plaintiff to replace his nonconforming windows. This memorandum opinion resolves exceptions to the Magistrate in Chancery's post-trial final report.

## I.    BACKGROUND[1]

### A.    The Parties

Plaintiff Kun Jiang ("Plaintiff") owns a condominium unit in Haslet Park (the "Condominium"), a condominium community in Newark, Delaware. Post-Trial Final Report [hereinafter Report] at 2–3, Dkt. 261. The Condominium was

---

[1] Trial testimony is cited as "Tr. (Witness) at __". *See* Dkts. 255–56. Joint exhibits are cited as "JX __" unless otherwise defined.

1

established in 1973 under the Delaware Unit Properties Act ("UPA").  JX 70 at 1.  The Condominium is governed by a declaration plan ("Declaration"), a code of regulations ("COR"), and rules of conduct (with the Declaration and the COR, the "Governing Documents").  JX 70; JX 71; JX 72.

Haslet Park Homeowner's Association (the "Association"), a Delaware corporation, acts as the Condominium's unit owners' association.  JX 69 at 1.  The Association is governed by a council of elected, volunteer unit owners (the "Council").  JX 71, Art. IV.

The Association has contracted with Mastriana Property Management, Inc. ("Mastriana") to act as the property manager, or "management agent," for the Condominium.  JX 62 at 1.

### B.     Plaintiff Replaces Windows In His Unit Without Notifying The Council.

Article VI, Section 2 of the COR requires a unit owner to perform maintenance and repairs within his or her unit if failing to do so would affect the other unit owners, specifying that "internal installations" such as windows "shall be at the owner's expense":

**Maintenance and Repair.**

> (a) Every unit owner must perform promptly all maintenance and repair work within his own unit, which if omitted would affect the project in its entirety or in a part belonging to other unit owners, being expressly responsible for the damages and liabilities that his failure to do so may endanger.

2

(b) All the repairs of *internal installations* of each individual unit not made common elements by the Declaration, *such as* water, lights, gas, power, kitchen equipment, telephone, air conditioners, sanitary installation, doors, *windows*, lamps and all other accessories belonging to the unit area *shall be at the owner's expense*.

JX 71, Art. VI § 2 (emphasis added).

Article VI, Section 3 of the COR prohibits a unit owner from making "structural modifications or alterations of his unit or installations, in his unit or installations located therein," without first notifying the Council:

**Use of Individual Units-Internal Changes.** A unit owner shall not make structural modifications or alterations of his unit or installations, in his unit or installations located therein, without previously notifying the Council in writing, through the management agent, if any, or through the President if no management agent is employed. The Council shall have the obligation to answer within thirty days and failure to do so within the stipulated time shall mean that there is no objection to the proposed modification or alteration.

*Id.*, Art. VI § 3.

Shortly after Plaintiff purchased his unit, in July 2018, Mastriana told Plaintiff in an email that "any changes [to] the exterior [of his unit] in appearance . . . w[ould] have to be approved in advance by the Council." JX 1 at 1. Plaintiff responded that he "would be happy to comply with the HOA policies . . . and w[ould] provide details of the vent and the doors, windows[.]" *Id.*

Four years later, in September 2022, Plaintiff replaced the second-story windows on the front side of his unit without first notifying the Council. Report at

3

2. Unlike other second-story windows in the Condominium, Plaintiff's new windows open vertically instead of horizontally and have decorative muntins. *Id.* In October, at the Council's direction, Mastriana informed Plaintiff that his failure to notify the Council before installing new windows violated the COR. JX 8. Plaintiff disputed the Council's interpretation of the COR. JX 9.

On November 22, Plaintiff asked to speak at an upcoming Council meeting scheduled for January 17, 2023. JX 15 at 1. Mastriana relayed to Plaintiff that, according to the Association's attorney, "[i]f [Plaintiff] replaces windows, he is free to address [the] Board. If he doesn't comply, then there is no reason to listen to an owner who is non-compliant." *Id.*

On February 24, 2023, the Council notified Plaintiff in writing that if he failed to replace his windows, the Council would begin to "impose a fine of $20.00 per day starting on March 11, 2023 for each day the unapproved windows remain, and after thirty (30) days the fine will be $30 per day until such time as the windows are replaced with approved windows." JX 17 at 2. The same day, the Council filed a "Notice of Continuing Violation" against Plaintiff and his unit with the New Castle County Recorder of Deeds. JX 18.

On March 24, the Council asked Plaintiff to attend an upcoming Zoom meeting scheduled for April 11 to discuss the window violation. JX 24. Plaintiff claims he never received login credentials for the meeting. Tr. (Jiang) at 259:2–9.

On June 26, the Council invited Plaintiff to address the violation at another Zoom meeting scheduled for June 27. JX 32. Plaintiff attended that meeting and spoke for approximately forty minutes. Tr. (Hale) at 407:15–16.

## C. Plaintiff Runs For A Position On The Council.

After the June 27 meeting, Plaintiff campaigned for a position on the Council. *Id.* (Jiang) at 10:14–16, 198:13–18. The Association held its annual meeting to elect Council members on July 18, but had to reconvene the meeting after failing to establish a quorum. *Id.* (Zeile) at 38:15–22; Tr. at 332:8–17.

On August 1, Plaintiff initiated this action through the filing of a Verified Complaint (the "Complaint"). Pl.'s Verified Compl. [hereinafter Compl.], Dkt. 1. Unit owners cast their votes for Council members at the reconvened annual meeting the following week, on August 8. JX 47; JX 56; JX 57. The Association's attorney collected proxies and ballots at the meeting and counted them the next day. JX 73 at 3; Tr. (Scheper) at 458:1–7, 459:2–8. An inspector of election certified the election results. JX 47. Plaintiff received approximately 17.57% of the votes, which was insufficient to elect him to the Council. JX 47; JX 57.

At the August 8 meeting, the Council also purported to adopt a resolution (the "Resolution") requiring that "[e]ach Owner shall be responsible for the reasonable attorney[s'] fees, costs and expenses incurred from having the Association's designated attorney correspond with said Owner concerning any violation of the

5

Governing Documents, any delinquent condominium fees, or delinquent common or special assessment." JX 73 at 1. The Resolution further provided that "[i]n the event litigation is necessary to collect any outstanding delinquent condominium fees or special assessments, or to enforce any provision of the Governing Documents, the Owner shall be responsible for reasonable attorneys' fees, costs and expenses incurred by the Association in such action." *Id.*

### D. Procedural History

On November 29, Plaintiff filed the operative Amended Verified Complaint (the "Amended Complaint"). Pl.'s Am. Verified Compl. [hereinafter Am. Compl.], Dkt. 23. The Amended Complaint alleged that the Association violated the COR by refusing to approve his windows; violated the Delaware Uniform Common Interest Ownership Act ("DUCIOA") for levying fines without an opportunity to be heard; improperly declined to resolve the matter through arbitration; and took arbitrary and capricious enforcement actions. *Id.* ¶ 47. Although the Complaint and the Amended Complaint named only the Association and Mastriana as defendants, the Amended Complaint further alleged that the Council members breached their fiduciary duties, and that Mastriana aided and abetted such breaches. *Id.* ¶¶ 48–59. The Amended Complaint also alleged counts for defamation, civil conspiracy, and intentional infliction of emotional distress. *Id.* ¶¶ 60–72.

6

On January 8, 2024, the Association filed an answer and counterclaims (the "Counterclaims"), alleging claims for a declaratory judgment that Plaintiff violated the Governing Documents and trespass, and seeking costs and attorneys' fees. Answer and Countercl. to Am. Pl.'s Verified Compl. by Def., Haslet Park Homeowner's Ass'n, Inc., Countercls. ¶¶ 21–57, Dkt. 72.

The action was assigned to a Magistrate in Chancery. On July 31, the assigned Magistrate Judge issued a report dismissing Plaintiff's claims for defamation and intentional infliction of emotional distress. Dkt. 46 at 7–8, 9.

The Magistrate in Chancery held a two-day trial on September 9 and 10, 2025. Dkt. 254. During trial, the Magistrate Judge issued an oral report dismissing Plaintiff's claim for civil conspiracy and denying requests for punitive damages and an order dissolving the Council. Report at 9; Tr. at 336:21–343:20.

On February 6, 2026, the Magistrate in Chancery issued a post-trial final report (the "Final Report"). The Final Report reached the following conclusions:

- The Final Report found that Plaintiff violated Article VI, Section 3 of the COR by installing windows without first notifying the Council in writing. Report at 31. The Final Report concluded that the Association was entitled to a permanent injunction requiring Plaintiff to replace his nonconforming windows. *Id.*

- The Final Report found that the Association breached its fiduciary duties to Plaintiff in two ways. *Id.* at 17, 21. First, the Final Report found that the Association breached its fiduciary duties in connection with the 2023 annual meeting to elect Council members by sharing proxy forms with unit owners "who supported the sitting Board members," omitting Plaintiff's name from the Council's proxy form, "controlling electoral and financial information," and "privately counting ballots." *Id.* at 18, 21. Second, the Final Report found that the Association breached its fiduciary duties by dealing with Plaintiff in an "adversarial" manner, conditioning his participation at meetings on compliance with the COR, declining Plaintiff's request for an in-person inspection, and "escalat[ing]" the matter by retaining counsel and imposing fines. *Id.* at 19, 21.

- The Final Report found that Plaintiff failed to prove that Mastriana breached a fiduciary duty or aided and abetted a breach of fiduciary duty. *Id.* at 14.

- The Final Report found that the Association failed to prove its counterclaim for trespass. *Id.* at 30.

- The Final Report struck down the fine that the Association had imposed on Plaintiff. *Id.* at 28.

8

- The Final Report declined to shift the Association's costs and attorneys' fees onto Plaintiff. *Id.* at 35–40.

Both Plaintiff and the Association filed exceptions to rulings in the Final Report (the "Exceptions"). Dkts. 262–264. The parties filed ten briefs in connection with the Exceptions.[2] Briefing concluded on June 16. Dkts. 284–286.

## II.   ANALYSIS

Exceptions to a Magistrate in Chancery's report are reviewed *de novo*. *DiGiacobbe v. Sestak*, 743 A.2d 180, 184 (Del. 1999). I have reviewed the Exceptions briefing, the Final Report, and the record below. Good cause does not exist to expand the record except as indicated below. *See* Ct. Ch. R. 144(e).

---

[2] Opening Br. in Supp. of Pl.'s Exceptions to Final Report [hereinafter Pl.'s OB], Dkt. 275; Countercl. Pl., Haslet Park Homeowners Ass'n, Inc.'s Opening Br. in Supp. of Its Exceptions to the Final Report of the Honorable Loren Mitchell, Magistrate in Chancery, on February 6, 2026 [hereinafter Countercl.'s OB], Dkt. 276; Def. Haslet Park Homeowners Association's Opening Br. in Supp. of Its Exceptions to the Magistrate's Final Report [hereinafter Def.'s OB], Dkt. 277; Def. Haslet Park Homeowners Association's Answering Br. in Supp. of Its Opp'n to Pl.'s Opening Br. in Supp. of Pl.'s Exceptions to Final Report [hereinafter Def.'s AB], Dkt. 278; Countercl. Pl.'s Answering Br. in Opp'n to Pl. and Countercl. Def.'s Opening Br. in Supp. of His Exceptions to the Final Report, Dkt. 279; Def. Mastriana Property Management, Inc.'s Answering Br. in Opp'n to Pl. Kun Jiang's Opening Br. in Supp. of Pl.'s Exceptions to the Final Report, Dkt. 280; Pl.'s Reply Br. in Further Supp. of Pl.'s Exceptions to the Final Report as to Def. Mastriana Property Management, Inc., Dkt. 283; Pl.'s Reply Br. in Further Supp. of Pl.'s Exceptions to the Final Report as to Def. and Countercl. Pl. Haslet Park Homeowners Association, Inc., Dkt. 284; Countercl. Pl., Haslet Park Homeowners Association, Inc.'s Reply Br. in Supp. of Its Exceptions to the Final Report of the Honorable Loren Mitchell, Magistrate in Chancery, on February 6, 2026, Dkt. 285; Def. Haslet Park Homeowners Association's Reply Br. in Supp. of Its Exceptions to the Magistrate's Final Report, Dkt. 286.

Plaintiff takes exception to the Final Report's determinations that (1) Plaintiff violated Article VI, Section 3 of the COR and (2) Plaintiff failed to prove any claims against Mastriana. The Association takes exception to the Final Report's determinations that (1) the Association breached its fiduciary duties, (2) the fines levied against Plaintiff are invalid, and (3) the Association is not entitled to an award of costs and attorneys' fees.

## A. The Final Report Correctly Interpreted The COR.

The Final Report found that Plaintiff violated Article VI, Section 3 of the COR by installing windows without first notifying the Council in writing. Plaintiff argues that the Final Report misinterpreted the COR.

"A condominium declaration and its accompanying code of regulations together form no more than an ordinary contract between the unit owners . . . created under the statutory framework of the Unit Properties Act." *Council of Dorset Condo. Apartments v. Gordon*, 801 A.2d 1, 5 (Del. 2002). "When a contract's plain meaning, in the context of the overall structure of the contract, is susceptible to more than one reasonable interpretation, courts may consider extrinsic evidence to resolve the ambiguity." *Salamone v. Gorman*, 106 A.3d 354, 374 (Del. 2014).

The parties appear to agree that Article VI, Section 3 of the COR is ambiguous.[3] Section 2 specifies that "*internal installations*" *such as windows* "shall be at the owner's expense," and Section 3 prohibits a unit owner from "mak[ing] structural modifications or alterations of his unit or installations, in his unit or *installations located therein*, without previously notifying the Council in writing[] . . . ." JX 71, Art. VI §§ 2, 3 (emphasis added). The Association interprets these provisions to require the Council's approval before installing windows, reasoning that windows are "structural" because they form an integral part of the structure of the building, and are also internal "installations." *See* Def.'s OB at 4–5. That is a reasonable interpretation (if not the only reasonable reading) of Article VI, Sections 2 and 3.

Plaintiff argues that the Association's interpretation is incorrect because windows are not part of the Condominium's "load-bearing elements, framing, or structural integrity." Pl.'s OB at 11. Assuming Plaintiff's reading is also reasonable, the COR is at best ambiguous and the Court must "look to extrinsic evidence to

---

[3] Plaintiff argues that "[t]he governing documents do not define 'structural'" and asks the Court to consider a belatedly produced letter from the New Castle County Code Enforcement Manager explaining that under the New Castle County Code, window replacement does not require a permit for "[s]tructural changes" because installing a window does not affect a building's "load-bearing elements." *See* Dkt. 267. Plaintiff has not shown good cause to supplement the record with this belatedly produced evidence, but his reliance on evidence outside the four corners of the COR suggests he also believes the COR is ambiguous.

resolve the ambiguity." *Holzbaur v. Trolley Square Hosp., LLC*, 340 A.3d 603, 611 (Del. Ch. 2025).

As the Final Report explained, the trial record shows the Association has consistently interpreted Article VI, Section 3 to require Council approval before installing windows.[4] "When other unit owners sought to make exterior modifications, they submitted written requests and awaited a formal decision before proceeding," and the Council "applied the same approval requirements to all residents." Report at 25–26. The parties' communications also show that Plaintiff understood the Association required prior approval before installing windows. When Plaintiff conducted renovations after purchasing his unit, Mastriana told him that "any changes on the exterior in appearance[] w[ould] have to be approved in advance by the Council" and Plaintiff agreed to "provide details of the vent and the doors, windows." JX 1 at 1. Thus, to the extent the Association's interpretation of

---

[4] *See* JX 10 at 1 ("This is the first time we have had any confusion regarding the intent of this bylaw . . . ."); Tr. (Mastriana) at 352:9–353:20 (testifying that in the past, "[a] homeowner would submit a brief email or letter stating their desire to replace the windows" and attaching documentation, which "would then be submitted to the [Council] for review and approval"); *id.* (Hale) at 395:5–19 ("[F]or any alterations, [the homeowner] submit[s] what they want to do, how they want to do it, a picture or diagram of what they want to replace . . . ."); *id.* (Scheper) at 433:21–435:3 (Council member testifying that when she replaced her own windows, she "went to the board and produced evidence of what [her] windows . . . would be, who would be doing them"); *id.* at 434:1–436:13 (explaining that other unit owners have obtained the Council's written approval before installing windows).

Article VI, Section 3 is not the only reasonable reading, all extrinsic evidence confirms the Association's reading.[5]

The Final Report found that the Association is entitled to a permanent injunction requiring Plaintiff to replace his nonconforming windows. Because Plaintiff's sole challenge to the permanent injunction rests on his incorrect interpretation of Article VI, Section 3, I find entry of the permanent injunction was not in error.

### B. The Association Did Not Breach Its Fiduciary Duties.

The Final Report found that the Association breached its fiduciary duties. The Association argues that this finding was erroneous. On *de novo* review, I conclude that the trial record does not support a claim for breach of fiduciary duty against the Association or the Council members.

### 1. The Association Does Not Owe Fiduciary Duties.

"A claim for breach of fiduciary duty requires proof of two elements: (1) that a fiduciary duty existed and (2) that the defendant breached that duty." *Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch. 2010), *aff'd sub nom. ASDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d 749 (Del. 2010). "A threshold question is whether [the

---

[5] Plaintiff claims he received oral approval from a former Council member, but even if that were true, the COR requires written approval. JX 71, Art. VI § 3; Tr. (Jiang) at 98:8–13, 242:3–246:15.

defendant] owe[s] fiduciary duties." *Witmer v. Armistice Cap., LLC*, 344 A.3d 632, 649 (Del. Ch. 2025), *aff'd*, 2026 WL 849994 (Del. Mar. 27, 2026) (TABLE).

The Final Report found that the Association breached its fiduciary duties. *See* Report at 17 ("The record supports a finding that Haslet Park breached its fiduciary duties of care and loyalty to its members. The evidence demonstrates that *the Association* engaged in conduct that undermined transparency, fairness, and the equitable treatment of homeowners . . . .") (emphasis added). "Fiduciary duties are owed to, not by, the corporation." *August v. Glade Prop. Owners Ass'n, Inc.*, 2023 WL 3359466, at *4 (Del. Ch. May 11, 2023), *exceptions den.*, 2023 WL 5423220 (Del. Ch. Aug. 23, 2023), *and exceptions den.*, 2023 WL 5431953 (Del. Ch. Aug. 23, 2023); *see also In re Solera Ins. Coverage Appeals*, 240 A.3d 1121, 1135 (Del. 2020) ("[T]he corporation itself does not owe fiduciary duties[.]"); *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 678 A.2d 533, 539 (Del. 1996) ("Fiduciary duties are owed by the directors and officers to the corporation and its stockholders."); *Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992) ("The only defendant is the corporate entity . . . so there are no fiduciary duty claims."). The Association could not breach fiduciary duties it did not owe.

Members of the Council owe fiduciary duties. *See* 25 *Del. C.* § 81-303(a) ("In the performance of their duties, officers and members of the executive board shall exercise the degree of care and loyalty to the association required of an officer or

14

director of a corporation organized under Delaware law.").[6]  But "[t]o the extent Plaintiff[] seek[s] a determination that [Council members] have breached a fiduciary duty, those individuals must be given an opportunity to defend their conduct." *Hutcherson v. Villas at Bay Crossing Condo. Ass'n, Inc.*, 2025 WL 48188, at *5 (Del. Ch. Jan. 8, 2025).  The Amended Complaint does not name any Council member as a defendant in this lawsuit.  This alone is a sufficient basis to enter judgment for the Association on the fiduciary duty claim.

### 2. The Council Members Did Not Breach Their Fiduciary Duties.

Even if the Council members were properly named as defendants in this action, the record does not support a finding that they breached their fiduciary duties.

Council members owe fiduciary duties of loyalty and care.  25 *Del. C.* § 81-303(a).  The duty of loyalty mandates that Council members may not put their personal interests above the interests of the Association and must act with a good faith belief that their actions will advance the best interests of the community. *Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983) (citing *Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del. 1939)); *In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 750–51 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006).  The duty of care requires

---

[6] Sections 81-302(a)(4), 81-302(a)(11), 81-303, and 81-417 of the DUCIOA apply to the Association even though it is a "preexisting community" formed under the UPA. *See* 25 *Del. C.* § 81-119.

Council members to "use that amount of care which [an] ordinarily careful and prudent [person] would use in similar circumstances" and to "consider all material information reasonably available" in making a decision on behalf of the Association. *Disney*, 907 A.2d at 749 (footnote omitted). To support a care violation, a defendant's conduct must amount to gross negligence, *i.e.*, "conduct that constitutes reckless indifference or actions that are without the bounds of reason." *In re Kraft Heinz Demand Refused Deriv. S'holder Litig.*, 2024 WL 3493957, at *8 (Del. Ch. July 19, 2024) (quoting *McPadden v. Sidhu*, 964 A.2d 1262, 1274 (Del. Ch. 2008)); *see also Smith v. Van Gorkom*, 488 A.2d 858, 873 (Del. 1985) ("[T]he concept of gross negligence is . . . the proper standard for determining whether a business judgment reached by a board of directors was an informed one."), *overruled on other grounds by Gantler v. Stephens*, 965 A.2d 695 (Del. 2009).

The Final Report found breaches of fiduciary duty based on (1) the Council's conduct at the 2023 annual meeting to elect Council members and (2) the Council's enforcement actions against Plaintiff. Beginning with the annual meeting to elect Council members, Plaintiff did not show that any Council member had a personal financial interest, or a disabling relationship with any person who had a personal financial interest, in connection with the meeting. Though characterized as a breach of the duty of care, the Final Report suggested that the Council members may have acted disloyally to entrench themselves by "selectively distributing proxies,

16

controlling electoral and financial information, and privately counting ballots to maintain [their] control over the Association's governance rather than promote open and independent participation." Report at 21–22.  But nothing in the record suggests the Council members had a financial or other disabling interest in protecting their *volunteer positions*.

The Council did not interfere with Plaintiff's ability to seek election.  The Final Report found a breach of fiduciary duty because the Council omitted Plaintiff's name from its proxy form, "control[ed] electoral and financial information," and "privately count[ed] ballots."  *Id.* at 21.[7]  Nothing in the UPA, DUCIOA, or COR required the Council to provide proxies or ballots in any particular format.  JX 71, Art. II §§ 1–5; Tr. (Hale) at 409:9–17.  There is no provision in Delaware law requiring a "universal proxy."[8]  *See* 8 *Del. C.* § 112 ("The bylaws *may* provide that if the corporation solicits proxies with respect to an election of directors, it may be required . . . to include in its proxy solicitation materials (including any form of proxy it distributes), in addition to individuals nominated by the board of directors,

---

[7] The Final Report held that "[t]hese actions reflect a failure to exercise sound judgment and impartial administration consistent with the duty of care, instead suggesting a self-perpetuating governance approach that disadvantaged dissenting members."  Report at 18–19.

[8] The Final Report cited the SEC's universal proxy rules as "illustrat[ing] a broader commitment to transparency and undistorted voter choice."  Report at 18 n.81.  However, as the Final Report acknowledged, "th[e] Association is not a corporate issuer and the federal regime does not directly apply[.]"  *Id.*

17

1 or more individuals nominated by a stockholder.") (emphasis added).[9] The suggestion that the Association's attorney counted ballots in "secret" does not support a loyalty claim; the Association used an inspector of elections and nothing about that process was untoward. JX 47.[10] And there is nothing in the record that suggests that the ballots were not properly counted. *See* JX 47; JX 57; JX 60.

The record also shows Plaintiff was not precluded from participating in the election. Plaintiff testified that he campaigned door to door. Tr. (Jiang) at 183:10–11 ("I was campaigning, I was knocking on people's door[s]"). He created his own proxy forms. *Id.* at 263:21–23 ("I copied the HOA's proxy form and created one form for myself."). Mastriana added his name to the ballot. *Id.* (Mastriana) at 357:8–

---

[9] Nor is there a requirement that an incumbent board of directors support an opposition's campaign to oust them. On the contrary, longstanding Delaware authority recognizes that in certain circumstances, directors of a corporation may use corporate funds to counter an opposing faction in a proxy battle or other fight for control of the corporation. *See Hibbert v. Hollywood Park, Inc.*, 457 A.2d 339, 343 (Del. 1983); *cf. Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946, 959 (Del. 1985) ("[U]nless it is shown by a preponderance of the evidence that the directors' decisions were primarily based on perpetuating themselves in office, or some other breach of fiduciary duty such as fraud, overreaching, lack of good faith, or being uninformed, a Court will not substitute its judgment for that of the board.").

[10] Citing Article III, Section 7 of the COR, the Final Report states that "[t]he bylaws also suggest that the inspector of the election should be elected, not appointed . . . ." Report at 17 n.76. The COR does not require that the inspector of election be elected. Article III, Section 7 of the COR dictates the "order of business at all meetings . . . (where and as applicable)," and lists, among other agenda items, "Elections of inspectors or [sic] election." JX 71, Art. III § 7(f). But Article III, Section 3 of the COR, which governs annual meetings to elect Council members, includes no such requirement. JX 71, Art. III § 3 (citing election requirements in Art. IV § 5).

13 (testifying that Mastriana "did . . . in fact, add [Plaintiff's] name to the ballot"). And Plaintiff received approximately 17.57% of the votes. JX 47. Plaintiff did not receive the votes required to obtain a seat on the Council, but the fact that he received nearly 18% of the votes supports a finding that the Council did not interfere with the unit owners' franchise or impede Plaintiff's election. *Cf. Blasius Indus., Inc. v. Atlas Corp.*, 564 A.2d 651, 660 (Del. Ch. 1988).

Separately, the Final Report found the Council members breached their fiduciary duties by dealing with Plaintiff's window violation in an "adversarial" manner, declining Plaintiff's request for an in-person inspection, and "escalat[ing]" the matter by involving counsel and imposing fines.[11] Those facts do not meet the high bar to prove the Council acted in bad faith, out of personal animus toward Plaintiff rather than to further the interests of the community. Nor do they support a finding that the Council members acted in a grossly negligent manner in breach of their duty of care. The Council observed the outside of Plaintiff's unit, consulted counsel, invited Plaintiff to attend multiple meetings (including one during which Plaintiff spoke for forty minutes), and determined to impose fines when he refused

---

[11] The Final Report criticized the Council's decision to "decline[] [Plaintiff's] repeated requests for an in-person inspection that might have resolved factual disagreements regarding the window modification, or at a minimum could have helped explain to [Plaintiff] the problem with the windows." Report at 20. The Final Report categorized these decisions as part of a campaign of "imprudent use of Association resources." *Id.*

19

to remedy the violation. The Council's decisions to use "Association resources" to remediate Plaintiff's violation and to decline mediation fell within its business judgment and do not demonstrate bad faith.[12] Report at 20–21; *cf. Zapata Corp. v. Maldonado*, 430 A.2d 779, 782 (Del. 1981) ("Directors of Delaware corporations" have "managerial decision[-]making power, which encompasses decisions whether to initiate, or refrain from entering, litigation."); *see also* 25 *Del. C.* § 81-302(a)(4) ("[The association] [*m*]*ay* institute, *defend*, or intervene in litigation, arbitration, mediation or administrative proceedings in its own name . . . subject to . . . the provisions of § 81-321 of this title.") (emphasis added).

I therefore conclude, on *de novo* review, that the trial record does not support a finding that either the Association or the Council members breached a fiduciary duty. The Final Report is modified accordingly.

### C. The Final Report Correctly Found That Plaintiff Failed To Prove Any Claims Against Mastriana.

The Final Report found that Plaintiff failed to prove claims against Mastriana for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, or civil conspiracy. Plaintiff takes exception to those findings.

---

[12] *See* Report at 21 ("The failure to engage in good-faith resolution efforts, when coupled with the denial of meeting access and selective enforcement of participation rights, reflects a disregard for member interests which are inconsistent with the obligations of diligence and impartiality inherent in the duty of care."). This conduct does not support a finding of gross negligence.

20

The Final Report correctly found that Plaintiff failed to prove his claims against Mastriana. As a threshold matter, Mastriana could not have breached a fiduciary duty because it did not owe fiduciary duties to Plaintiff in its position as the Association's property manager. "A fiduciary relationship arises in a situation where one person reposes special trust in, and reliance on, the judgment of another, or where a special duty exists on the part of one person to protect the interests of another. In contrast, a straightforward, arm's-length commercial relationship arising from contract does not give rise to fiduciary duties." *Forsythe v. ESC Fund Mgmt. Co. (U.S.), Inc.*, 2007 WL 2982247, at *10 (Del. Ch. Oct. 9, 2007) (footnote omitted). In general, "Delaware courts are reluctant to recognize a 'special' nature in relationships" that would give rise to a fiduciary duty, "but have recognized such a relationship in limited circumstances involving 'express trustees and corporate officers and directors,' as well as 'general partners; administrators or executors; guardians; and, in special circumstances, joint venturers or principals and their agents.'" *August*, 2023 WL 3359466, at *8 (quoting *Metro Ambulance, Inc. v. E. Med. Billing, Inc.*, 1995 WL 409015, at *3 (Del. Ch. July 5, 1995)). Delaware courts have declined to impose fiduciary duties on property managers. *See id.*

Moreover, even if Mastriana owed fiduciary duties, the Final Report properly concluded that it did not breach them. *See* Report at 14.

Additionally, Plaintiff's aiding and abetting claim fails because, as explained above, Plaintiff did not establish a predicate breach of fiduciary duty. "[A] claim for aiding and abetting a breach of fiduciary duty cannot survive if the underlying fiduciary duty claims do not." *See, e.g.*, *In re Hennessy Cap. Acq. Corp. IV S'holder Litig.*, 318 A.3d 306, 329 (Del. Ch. 2024) (quoting *City of Miami Gen. Empls. v. Comstock*, 2016 WL 4464156, at *23 (Del. Ch. Aug. 24, 2016), *aff'd*, 158 A.3d 885 (Del. 2017) (TABLE)). Plaintiff's civil conspiracy claim against Mastriana fails for the same reason: "[I]n the absence of an actionable wrong, a civil conspiracy claim will fail." *United Atl. Ventures, LLC v. TMTG Sub Inc.*, 2025 WL 2505325, at *18 (Del. Ch. Sep. 2, 2025) (quoting *Clouser v. Doherty*, 175 A.3d 86 (Del. 2017) (TABLE)).

Accordingly, the Final Report correctly concluded that Plaintiff failed to prove any claim against Mastriana.[13]

---

[13] Plaintiff argues that the Final Report conflicts with statements the Magistrate Judge made on the record during trial when dismissing his civil conspiracy claim, but sustaining the aiding and abetting claim, against Mastriana. The Magistrate Judge's statements were not inconsistent; the motion to dismiss ruling accepted Plaintiff's allegations as true, while the post-trial ruling was based on factual findings. In any event, both the civil conspiracy and aiding and abetting claims against Mastriana fail because Plaintiff did not prove an underlying wrong on which to premise either claim.

**D. The Final Report Correctly Rejected The Association's Trespass Counterclaim.**

The Final Report found that Plaintiff did not trespass on the Condominium's common elements. Report at 30–31. The Association argues that this finding was in error because affixing unauthorized windows to the Condominium's exterior physically interfered with the Council's right to maintain the common elements. Countercl.'s OB at 27.

"The tort of trespass consists of entry onto real property without the permission of the owner." *Del-Chapel Assocs. v. Conectiv*, 2008 WL 1934503, at *3 (Del. Ch. May 5, 2008). To prove a claim for trespass, the Association must establish that it has "lawful possession of the property" and that Plaintiff "entered onto *the* [*Association's*] land without consent or privilege." *Frye v. Est. of Raphaelson*, 2023 WL 5624717, at *12 (Del. Ch. Aug. 31, 2023) (emphasis added), *R. & R. adopted*, (Del. Ch. 2023).

Plaintiff has not committed trespass because he is a tenant in common with ownership rights over the common areas. As explained in the Final Report, "all unit owners—including [Plaintiff]—collectively own the common elements." Report at 30. Section 5(b) of the Declaration confirms that all common elements are collectively owned by Association members as undivided tenants in common. JX 70 § 5(b) ("The [c]ommon [e]lements . . . shall be owned by the 'Condominium Unit' owners . . . as undivided tenants in common . . . ."). "[O]ne tenant in common

23

cannot maintain trespass against his co-tenant, except under peculiar circumstances, as when there has been a destruction of the thing held in common[.]" *Collins v. Sussex Tr. Co.*, 1990 WL 63948, at *1 (Del. Super. Ct. Feb. 14, 1990) (quoting *McCall v. Reybold*, 1 Harr. 146, 150 (Del. Super. Ct. 1833)).[14]

This does not mean that Plaintiff may use the common areas however he wants. The COR is a contract among unit owners in the Association that governs permitted use of the common elements. The Final Report found that Plaintiff breached the COR and permanently enjoined him from further violations. But, as the Final Report explained, Plaintiff's unauthorized use of common property does not separately support a claim for trespass. Report at 30–31.

### E. The Association Must Supplement The Record On The Fine.

The Final Report rejected the monetary fine imposed on Plaintiff for failing to comply with the COR. Def.'s OB at 28; *see also* Report at 28. The Association takes exception to this finding.

Section 81-302(a)(11) of the DUCIOA authorizes an association, "after notice and an opportunity to be heard, [to] levy reasonable fines for violations of the declaration, bylaws and rules of the association." 25 *Del. C.* § 81-302(a)(11). The

---

[14] Delaware provides a statutory remedy for cotenants not in possession to recover damages for the rental value of the premises. 25 *Del. C.* § 702. The Association has not brought a claim under this statute.

Council provided Plaintiff with a written notice of his violation on February 24, 2023, warning Plaintiff that fines would begin to accrue on March 11. JX 17; JX 18. The Council gave Plaintiff an opportunity to be heard on June 27, during a Zoom meeting at which he spoke for forty minutes. JX 32; Tr. (Hale) at 407:15–16. "[R]easonable fines" levied after that date are authorized under the DUCIOA.[15]

That leaves the question of whether the fines levied are reasonable under the circumstances. To assist the Court in making that determination, the Association is directed to submit an affidavit detailing all fines imposed on Plaintiff after June 27, 2023.

### F. The Association Must Supplement The Record On Attorneys' Fees.

The Final Report rejected the Association's request for an award of fees incurred in connection with its enforcement efforts. The Association argues that this was also erroneous.

"Delaware follows the 'American Rule,' under which a prevailing party generally is expected to pay its own attorney[s'] fees and costs." *Haywood v.*

---

[15] The Final Report invalidated the fines levied against Plaintiff because the Council did not adopt a fine policy. *See* Report at 28 ("The timing, context, and absence of an established fine policy all point to a motive inconsistent with the fair and even-handed administration required under Delaware law."). The DUCIOA does not require an association to adopt a fine policy and the Final Report cited no other authority requiring one. Section 81-302(a)(11) dictates the circumstances under which an association may impose a reasonable fine—*i.e.*, after notice and an opportunity to be heard—but does not require a formal policy.

*AmBase Corp.*, 2005 WL 2130614, at *8 (Del. Ch. Aug. 22, 2005). An exception exists if a statute or contractual provision provides for fee-shifting. The Association argues that fee-shifting is appropriate under the Declaration, the Resolution, and Section 81-417(a) of the DUCIOA.

The Declaration does not provide a basis for shifting fees. The Association claims that Section 9(g) of the Declaration supports fee-shifting, but that section states only that a "[f]ailure to comply with this Declaration, Code of Regulations, Rules of Conduct, or any provision of the [UPA]" will "subject the offending party to an action for recovery of damages or for injunctive relief." JX 70 § 9(g). It says nothing about attorneys' fees.

The Resolution does not provide a basis for fee-shifting because the Association failed to prove that the Council had authority to adopt a free-standing "resolution" purporting to change the contractual relationship between unit owners of the Association. Neither the Declaration nor the COR includes a fee-shifting provision. Amending the COR to include such a provision would require "a duly constituted meeting for such purpose" and "approv[al] by unit owners representing at least two-thirds of all units in the project . . . ." JX 71, Art. VII § 1. That did not occur. Instead, the Council purported to adopt the Resolution unilaterally. Article IV, Section 3(e) of the COR permits the Council to adopt "rules and regulations covering the details of the operation and use of the property and the use of the

26

common elements, subject to the right of the majority of the unit owners to change such actions." *Id.*, Art. IV § 3(e). But a fee-shifting rule does not concern "the operation and use of the property and the use of the common elements," and the Association has identified no other provision in the COR authorizing the Council to unilaterally adopt rules.

Finally, the Association argues that fee-shifting is appropriate under Section 81-417(a) of the DUCIOA, which states that "[t]he court, in an appropriate case, may award court costs and reasonable attorneys' fees." 25 *Del. C.* § 81-417(a). This section "grants broad discretion to the trial court to determin[e] what constitutes 'an appropriate case.'" *Bragdon v. Bayshore Prop. Owners Ass'n, Inc.*, 251 A.3d 661, 685 (Del. Ch. 2021). An "appropriate case" "does not require a showing of bad faith." *Id.* at 686. Instead, "[a] case may be appropriate for fee-shifting where a party has 'acted unreasonably' or in an 'arbitrary and capricious' manner or has 'engaged in unreasonable litigation conduct.'" *Smernoff, Tr. Under Gerald N. Smernoff Revocable Tr. Dated May 24, 2000 v. King's Grant Condo. Ass'n, Inc.*, 2024 WL 3384826, at \*9 (Del. Ch. July 12, 2024), *judgment entered sub nom. Smernoff v. The King's Grant Condo. Ass'n, Inc.* (Del. Ch. 2024), *R. & R. adopted*, (Del. Ch. 2025).

To assist the Court in determining whether this is an appropriate case for fee-shifting, the Association's counsel is directed to submit an affidavit detailing the Association's court costs and reasonable attorneys' fees.

## III. CONCLUSION

The Final Report is modified as set forth above. Within fourteen days, the Association must submit affidavits detailing (1) all fines imposed on Plaintiff after June 27, 2023, and (2) the Association's court costs and reasonable attorneys' fees.